USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Mar. 30, 2015

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
MASAHIDE KANAYAMA, and WEBER 1005, :
LLC,
                                    :
            Plaintiffs,             :
                                    :   No. 14 Civ. 3405 (JFK)
    -against-                       :
                                    :   **OPINION & ORDER**
KESY LLC, PROVENCE WELLNESS CENTER  :
LLC, and BOARD OF MANAGERS OF THE   :
WEBER HOUSE CONDOMINIUM,            :
                                    :
            Defendants.             :
------------------------------------X

APPEARANCES

    For Plaintiffs Masahide Kanayama and Weber 1005, LLC:
        HOROWITZ SIGMOND LLP
        By:  Carol A. Sigmond

    For Defendant Provence Wellness Center LLC
        PILLINGER MILLER TARALLO, LLP
        By:  Laurence G. McDonnell

**JOHN F. KEENAN, United States District Judge:**

    Before the Court are Plaintiffs' motions to remand this action to New York County Supreme Court and for a finding of contempt against Defendant Provence Wellness Center for violating the state court's April 4, 2014 preliminary injunction. For the reasons that follow, Plaintiffs' motion to remand is denied in part and granted in part. Since the Court remands the state law causes of action that underpin the preliminary injunction, the motion for contempt will have to be addressed by the state court upon remand.

## I. Background

### A. Facts

Unless otherwise noted, the following facts are drawn from the amended state court complaint. Plaintiff Masahide Kanayama is a licensed physician and citizen of New York. He is also the managing member of Plaintiff Weber 1005, LLC ("Weber 1005"), which owns the fifth floor — where Kanayama conducts his medical practice — in the Weber House Condominium at 150 East 55th Street in Manhattan. Weber 1005 is a New York limited liability company with a principal place of business in New York.

Defendant Board of Managers of the Weber House Condominium ("the Weber House Board") formed and exists under New York's Real Property Law article 9-B. It operates the Weber House Condominium. Defendants KESY LLC ("KESY") and Provence Wellness Center LLC ("Provence Wellness") are New York limited liability companies with their principal places of business in New York. KESY and Provence Wellness allegedly share a common owner, and KESY owns the sixth floor of the Weber House Condominium, where Provence Wellness operates a spa providing high colonic therapies directly above Kanayama's medical office.

Plaintiffs allege that in 2007 they sought and were granted permission by the Weber House Board to install three hand-washing sinks in Kanayama's office, but only after he agreed to

install waterproof floors and a leak alarm.  That same year, the Weber House Board denied Plaintiffs' request to install a waste line to serve Kanayama's office through the ceiling of the fourth floor (i.e., the floor below his office).  Instead, Plaintiffs installed an interior water pump and waste line fully contained within the fifth floor.

In 2009, despite Kanayama's objections, the floor above him was rezoned as a "Physical Culture Establishment" so that Provence Wellness could operate a spa.  Again over his objections, the Weber House Board allowed Provence Wellness to install wet facilities such as a shower, washing machine, and toilets over his office.  Plaintiffs allege that although these installations were supposedly conditioned on the installation and use of waterproof floors and a leak alarm, the Weber House Board never confirmed or inspected the installations, floors, or alarms, which are all either nonexistent or deficient.

At some unspecified time, KESY and Provence Wellness installed a waste line through Plaintiffs' ceiling, over Plaintiffs' objections.  Plaintiffs allege that this was accomplished by persons entering their floor without permission to complete the installation.  Despite repeated demands to remove the waste lines, they remain on Plaintiffs' floor.  In the three years prior to the filing of the complaint, Plaintiffs allege that their office has been flooded from above thirteen

3

times, causing water damage to the office, including the presence of mold.  Plaintiffs allege that, despite repeated requests, Defendants have not taken reasonable steps to prevent these leaks.

### B. Procedural History

On March 17, 2014, Kanayama filed his complaint in New York County Supreme Court.  He asserted six causes of action: (1) trespass of KESY and Provence Wellness's waste line; (2) trespass by the leaks emanating from KESY and Provence Wellness's floor; (3) nuisance by the repeated leaks emanating from KESY and Provence Wellness's floor; (4) damages for destruction of property caused by the repeated leaks; (5) breach of fiduciary duty by the Weber House Board for allowing the leaks to continue unabated and causing a constructive eviction; and (6) racial discrimination under 42 U.S.C. § 1981 because Plaintiffs alleged that the Weber House Board has treated them disparately from KESY and Provence Wellness based on race.

Since the overlap of the state and federal claims determines whether a court has supplemental jurisdiction, and because the state claims are rather straightforward, the Court will set out Plaintiffs' lone federal claim in more detail. Plaintiffs allege that they were the victim of racial bias because the Weber House Board (a) required Plaintiffs to install waterproof floors and alarms, but did not require KESY and

4

Provence Wellness to prove it installed them; (b) violated its own policies when it assisted KESY and Provence in planning the trespass of the waste-line pipe; (c) exceeded its authority when it consented to the rezoning of the sixth floor to allow Provence Wellness to open a spa; and (d) has failed to take steps to ameliorate the flooding from the sixth floor. Plaintiffs believe this is because Kanayama is of Japanese descent and the owner of KESY and Provence Wellness is white. (Sigmond Aff. ¶ 6 n.1.)  Plaintiffs claim that the above demonstrates that the Weber House Board does not enforce and apply its Declaration and By-Laws in a nondiscriminatory manner.

Kanayama served Defendants on March 19, 2014.[1]  On April 4, 2014, the state court granted a preliminary injunction, ordering Defendant "by any reasonable means at their disposal, to stop liquid from leaking from their sixth floor premises into plaintiff's fifth floor office in the subject building." (McDonnell Aff. Ex. A.)  Kanayama then filed an amended complaint on April 8, 2014, adding Weber 1005, LLC as a plaintiff.  Weber 1005 joined Kanayama in asserting the same six claims from the original complaint.  Defendants received the

---

[1] Provence Wellness asserts that they were served on March 20, 2000 [sic]. (Notice of Removal ¶ 1.)  Plaintiffs have submitted their affidavits of service, which reflect that all three defendants were served on March 19, 2014. (Sigmond Aff. Ex. A.)  Provence Wellness does not contest this date in its opposition.

5

amended complaint through the state court's electronic filing system.

Defendant Provence Wellness filed its notice of removal with this Court on May 12, 2014. Removal was based on federal question jurisdiction because of Plaintiffs' claim of racial discrimination against the Weber House Board under 42 U.S.C. § 1981.

On May 21, 2014, Plaintiffs submitted a letter to the Court that sought "leave to bring a motion to remand this action" or, in the alternative, remand only the state claims back to state court. (ECF No. 7)  Defendants responded by letter on May 29, 2014.  On June 2, 2014, the Court entered an order:  "There is no need for a pre-motion conference for the contemplated motion. Plaintiffs may make their motion to remand." (ECF No. 8.)  After two failed filing attempts on June 27, 2014 and July 2, 2014 (ECF Nos. 16–17.), Plaintiffs successfully filed their motion to remand on July 7, 2014. (ECF No. 23.)

On January 30, 2015, Plaintiffs wrote to the Court, requesting a pre-motion conference to discuss a new preliminary injunction, again seeking to prevent further flooding of Kanayama's office.  Plaintiffs allege that the sixth floor flooded Kanayama's office again on January 20, 2015. (McDonnell Aff. Ex. A.)  On February 5, 2015, the Court entered an order allowing Plaintiffs to proceed with their motion without a

conference and requesting that the parties address the status of the state court preliminary injunction in their motion papers. (ECF No. 28.)

## II. Discussion

### A. Remand for Untimely Removal

#### 1. Legal Standard

On a motion for remand, the burden is on the defendant to establish that removal was appropriate. See Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004). The removal requirements are construed narrowly, and any doubts are resolved against removal. See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007).

A defendant may remove an action based on diversity or federal question jurisdiction from a state court to a federal district court by filing a notice of removal in the federal court. See 28 U.S.C. § 1446(a). Such a notice of removal "shall be filed within 30 days after" receipt of the initial pleading through formal service. Id. § 1446(b)(1); see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 348 (1999). Courts "rigorously enforce" this mandatory 30-day statutory requirement. Burr ex rel Burr v. Toyota Motor Credit Co., 478 F. Supp. 2d 432, 437 (S.D.N.Y. 2006).

Subject to limitations not relevant here, if the initial pleading is not removable on its face, then a defendant may remove the action within 30 days of receiving a copy of the amended pleading (or other paper) that reveals that the case is removable. See id. § 1446(b)(3). After filing of the notice of removal, the defendant must also "promptly" inform adverse parties and file a copy of the notice of removal with the state court clerk. Id. § 1446(d).

A plaintiff seeking to remand a case back to state court also has a deadline to keep in mind. A motion to remand must be made within 30 days of the filing of the notice of removal, unless there is a defect in subject matter jurisdiction, in which case the action must be remanded if the defect is identified before final judgment. Id. § 1447(c). While the 30-day period in § 1446(b)(1) is strict, the 30-day deadline in § 1447(c) is stricter: failure to move for remand within 30-days of removal based on any nonjurisdictional defect results in waiver of those defects. See Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642, 643 (2d Cir. 1993) ("[A]ll motions for remand — except those based on lack of subject matter jurisdiction — must be made within 30 days after removal or they are waived.")

Failure to file the notice of removal within 30 days of receipt of a removable pleading is a procedural defect rather than a jurisdictional one. See Flood v. CSX Transp., Inc., No.

8

11 Civ. 162, 2012 WL 464189, at *2 (W.D.N.Y. Feb. 13, 2012). Thus, a motion premised on that defect is waived if not asserted within the thirty-day window provided by § 1447(c).

### 2. Analysis

The initial complaint was removable because it contained a federal claim under 42 U.S.C. § 1981. See § 1441(c); see also Williams-Velasquez v. Guardian Life Ins. Co., No. 99 Civ. 738, 2003 WL 22038567, at *1 (S.D.N.Y. Aug. 29, 2003) (noting subject matter jurisdiction over § 1981 claim). That the amended complaint added Weber 1005 is irrelevant, since the initial complaint was already removable on its face. See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., No. 00 Civ. 1898, MDL 1358, 2006 WL 1004725, at *5 (S.D.N.Y. Apr. 17, 2006) ("Merely naming two new plaintiffs does not restart defendants' removal clock because the essential nature of the case has not changed."). Provence Wellness points to nothing else in the amended complaint that would suggest it provided "a new basis for removal" or changed "the character of the litigation so as to make it substantially a new suit," such that the right to remove could be revived. MC Bldg. Materials, Ltd. v. Paychex, Inc., 841 F. Supp. 2d 740, 744 (W.D.N.Y. 2012) (internal quotation marks omitted); see also MTBE Prods Liab. Litig., 2006 WL 1004725, at *3 ("Where the pleading amendments do not change the 'target' of a plaintiff's attack, the basic legal theory of

9

the case, or the 'nature of the relief sought' there is no revival.")

Similarly, although Provence Wellness avers that Plaintiffs received a copy of the notice of removal before the 30 days expired, that is insufficient because the notice of removal must be "filed" within the 30 days. See § 1446(b). A paper is not "filed" until it is delivered to the court — either to the clerk or a judge. See Fed. R. Civ. P. 5(d)(2). Mailing a copy to plaintiff therefore does not satisfy the filing requirement.

There is thus no doubt that Defendant Provence Wellness's notice of removal was untimely. Provence Wellness does not dispute that Kanayama served it with the initial complaint on March 19, 2014. Since the 30-day window to remove opened on that date, Provence Wellness had until April 18, 2014, a Friday, to remove the action. Defendant did not file its notice of removal until twenty-four days later on May 12, 2014. The notice of removal itself purports to be timely "exclusive of legal holidays and days when the court was closed" (Notice of Removal ¶ 3.), but Rule 6(a)(1)(B) of the Federal Rules of Civil Procedure prevents such a reading. See Fed. R. Civ. P. 6(a)(1)(B) ("[C]ount every day, including intermediate Saturdays, Sundays, and legal holidays . . . .") Indeed, legal holidays and weekends only come into effect if the thirtieth day

falls on one, which was not the case here. See Fed. R. Civ. P. 6(a)(1)(C).

The filing of a late notice of removal, however, does not automatically mean that remand is appropriate.  As discussed above, a late filing is not a jurisdictional defect and may therefore be waived. See Phx. Global Ventures, LLC v. Phx. Hotel Assocs., Ltd., 422 F.3d 72, 75 (2d Cir. 2005); Bedminster Fin. Grp., Ltd. v. Umami Sustainable Seafood, Inc., No. 12 Civ. 5557, 2013 WL 1234958, at *2 (S.D.N.Y. Mar. 26, 2013); Flood, 2012 WL 464189, at *2.  Plaintiffs are wrong when they state that failure to timely remove an action to federal court is jurisdictional.  The case they cite for that proposition does not so hold, and, unlike here, there was no dispute that the motion to remand was filed within the 30-day window so there was no question of waiver. See Hallenback v. Transgas, Inc., 53 F. Supp. 2d 543, 544 (N.D.N.Y. 1999).

Plaintiffs waived their ability to seek remand on the basis of untimely removal by ignoring their own 30-day deadline to remand for such a defect. See § 1447(c).  Since Defendant removed this action on May 12, 2014, Plaintiffs had until June 11, 2014 to move for remand on the basis of a procedural defect. Plaintiffs did not successfully file their motion until July 7, 2014, twenty-five days late.

Plaintiffs make two arguments that they hope will excuse their lateness. Neither is persuasive. First, they claim that their lateness should be excused because they made two previous attempts to file their motion via the Court's electronic case filing system on June 27, 2014 and July 2, 2014. To be sure, the Court has the power to excuse technical filing defects when considering a motion to remand. See Phx. Global Ventures, 422 F.3d at 76 ("Our decision today simply recognizes the district court's authority to excuse [Plaintiff's] failure to comply with the ECF system requirements and thus deem the motion made at the time when, but for this noncompliance, the motion would have been made.") But this is not such a case since both of Plaintiffs' previous attempts were also untimely.

Second, Plaintiffs contend that the time to remand should be tolled because they requested leave to file their motion on May 21, 2014. The one case that Plaintiffs cite for support does not help them. In Federal Insurance Co. v. Tyco International Ltd., the motion to remand was filed within the 30-day window but "was denied without prejudice merely for failure to comply with the Court's individual practices, which require a moving party to submit a pre-motion letter outlining the basis for the motion and requesting a pre-motion conference." 422 F. Supp. 2d 357, 369 (S.D.N.Y. 2006). Thus, it

12

was more analogous to a technical filing defect.  Plaintiffs are not entitled to tolling.

Moreover, the Court sees no reason to extend the reasoning in Federal Insurance to this case.  Neither Section 1447 nor the Federal Rules of Civil Procedure definitively answer when a motion is "made" beyond tying it to the filing of the motion with the court.  See Phx. Global Ventures, 422 F.3d at 75–76.  But it is clear from the text of Plaintiffs' letter, the Court's order, and Plaintiffs' filing of a separate notice of motion that the letter itself was not the making of a motion.  Plaintiff's letter sought "leave" to file a remand motion and gave no indication that it was meant as a motion.  The Court's order gave permission to "make" the "contemplated motion," indicating that a motion had not yet been made.  Finally, Plaintiffs betrayed no misapprehension when they later filed their notice of motion and supporting documentation without seeking further clarification from the Court.

After the Court granted leave to move without a pre-motion conference, Plaintiffs had nine days to make their motion.  Even if the Court were to give Plaintiffs the benefit of their first rejected filing, Plaintiffs were still over two weeks late.  The Court sees no reason to exercise whatever discretion it may have to excuse the late filing.  See also Scantek Med., Inc. v. Sabella, No. 08 Civ. 453, 2008 WL 2518619, at *3–4 (S.D.N.Y.

13

June 24, 2008). Therefore, because of Plaintiffs' clear tardiness under § 1447(c), the Court cannot grant remand on the basis of Provence Wellness's obvious failure to timely comply with § 1446(b)(1).

### B. Remand of the State Law Claims

#### 1. Legal Standard

Federal courts may exercise supplemental jurisdiction over state law claims where the state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Put another way, the state and federal claims should arise from a "common nucleus of operative fact." LaChapelle v. Torres, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014). Supplemental jurisdiction is thus appropriate where there is a substantial overlap of the federal and state claims or "where presentation of the federal claim necessarily brings the facts underlying the state claim before the court." Patel v. Baluchi's Indian Rest., No. 08 Civ. 9985, 2009 WL 2358620, at *6 (S.D.N.Y. July 30, 2009).

However, that a court may entertain state claims that it has supplemental jurisdiction over does not mean that it must entertain them. A district court may decline to exercise supplemental jurisdiction over a state law claim where, inter

alia, the state law claim "substantially predominates" over federal claims. 28 U.S.C. § 1367(c)(2). "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed" or, in this case, remanded. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 727 (1966); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988); Sherman v. Town of Chester, No. 01 Civ. 8884, 2001 WL 1448613, at *4–5 (S.D.N.Y. Nov. 15, 2001). A court should not exercise this discretion, however, "unless it also determines that [exercising supplemental jurisdiction] would not promote the values . . . [of] economy, convenience, fairness, and comity." Oneida Indian Nation of N.Y. v. Madison Cnty., 665 F.3d 408, 439 (2d Cir. 2011) (alterations in original) (internal quotation marks omitted).

### 2. Analysis

Although the Court has supplemental jurisdiction, it will decline to retain it over the state law claims. This is an instance of state law issues dominating an overlapping federal claim.

The Court has supplemental jurisdiction because the federal discrimination claim will bring forth some of the facts that would support the state law claims. The federal claim is premised on the Weber House Board's alleged racial bias in

15

enforcing its Declaration and By-Laws. To support their disparate treatment, Plaintiffs allege, inter alia, that the Weber House Board assisted KESY and Provence in planning the trespass of the waste-line pipe and failed to take steps to ameliorate the flooding from the sixth floor. There is thus a sufficient overlap with the state court claims because they concern the trespass of the waste line and leaks, nuisance as a result of the leaks, damages as a result of the leaks, and the Weber House Board's breach of its fiduciary duties in allowing the trespass and nuisance to continue.

Although the Court finds an adequate overlap to justify its supplemental jurisdiction over the state claims, this case is plainly dominated by broken pipes and flooded floors, not discrimination. The federal claim is but a bit player in this action starring Plaintiffs' state claims, and the state claims are suitable candidates for remand.

Provence Wellness argues, citing Kirschner v. Klemons, 225 F.3d 227 (2d Cir. 2000), that the state claims are "inexorably intertwined" with "an anchoring federal question." (Def. Mem. 8.) But Kirschner only addressed whether the court had supplemental jurisdiction, not whether it was appropriate to decline to exercise it. Provence Wellness is also wrong in characterizing the state claims as factual predicates for the discrimination claim. Although Plaintiffs claim that the

continued trespass and nuisance demonstrate discrimination, they also point to the Weber House Board exceeding its authority in consenting to rezoning and not requiring KESY and Provence Wellness to prove they installed waterproof floors or alarms, neither of which need to be established for nuisance or trespass.  Thus, trespass and nuisance are not essential to Plaintiffs' discrimination claim and there is no danger of inconsistent verdicts.

Having concluded that the state claims may be remanded, the Court next considers whether it should remand them.  Economy, convenience, fairness, and comity suggest that remand of the state claims is appropriate.  Chief among the Court's considerations is the fact that this case is still in the initial stages of litigation.  Additionally, as discussed above, there is no need for the state claims to be tried together with the federal claim.  Although the state claims are rather straightforward, Plaintiffs are also seeking to enforce a state court preliminary injunction.  This Court finds principles of comity suggest that the state court is in the better position to interpret and enforce its own injunction.  Defendants point to no other considerations that counsel against remand.  Therefore, the Court will remand the state court claims.

Finally, the Court also notes that even if it were to continue to exercise supplemental jurisdiction over the state

claims, as a practical matter it would just be waiting for the other shoe to drop.  Plaintiffs have already indicated that in the event their motion to remand was denied they were "prepared to dismiss Count 6" in order to remove the federal claim from this case. (Reply Aff. ¶ 8.)  Remand of the state claims would almost certainly be appropriate then. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." (internal quotation marks omitted)); Maguire v. A.C. & S., Inc., --- F. Supp. 3d ----, 2014 WL 6611748, at *5 (S.D.N.Y. 2014).

     Therefore, Plaintiffs' motion to remand their state law claims (i.e., their first through fifth claims) back to New York County Supreme Court is granted.  Since Plaintiffs' motion concerning the state court preliminary injunction only concerns their state court claims, the Court will not address it. See Bloomfield v. MacShane, 522 F. Supp. 2d 616, 623 (S.D.N.Y. 2007) ("These motions remain pending for resolution by the state court following remand.")

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion to remand their first, second, third, fourth, and fifth claims back to New York County Supreme Court is granted. Therefore, the Clerk of Court is respectfully directed to remand those claims to the Supreme Court of the State of New York, New York County.

The motion for contempt remains pending and will have to be addressed by the state court upon remand.

**SO ORDERED.**

Dated:   New York, New York
         March 30, 2015

                                    _____
                                           John F. Keenan
                                    United States District Judge